## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

L<small>A</small>D<small>ONNA</small> S<small>UE</small> C<small>ARTER</small>                                                                                             P<small>LAINTIFF</small>

v.                                                                                                                          N<small>O</small>. 4:23-<small>CV</small>-30-BJB

J<small>EREMY</small> L<small>OGSDON</small>                                                                                                   D<small>EFENDANT</small>

### M<small>EMORANDUM</small> O<small>PINION</small> & O<small>RDER</small>

LaDonna Sue Carter believes her County Attorney has violated the First Amendment by refusing to allow her to contact his office and by refusing to take any action if her communications somehow make it through. Because these *pro se* allegations plausibly describe facts that, if true, could violate her freedoms to speak and petition her government, and because the County Attorney hasn't adequately supported his immunity defenses, the Court denies the County Attorney's motion to dismiss.

### A. Allegations

LaDonna Sue Carter sued Jeremy Logsdon, the Grayson County (Ky.) Attorney, for damages based on alleged First Amendment violations. Complaint (DN 1) at 2, 4–5. Taking all her non-conclusory factual allegations as true, as the Court must in response to Logsdon's motion to dismiss, Logsdon told her to never contact his office and told his staff to hang up if she does. *Id.* at 4–5. This is consistent with her response brief's assertion (not expressly included in her complaint) that Logsdon preemptively refused to prosecute any "kind of crime … committed against her" and otherwise denied her "access to his office." Response (DN 11) at 2.*

Logsdon moved to dismiss on the grounds that sovereign immunity bars her official-capacity claims, prosecutorial immunity bars the individual-capacity claims, the statute of limitations bars all claims, and liability for retaliation wouldn't apply even if her allegations were true. Motion to Dismiss (DN 10) at 5–11.

Carter, suing without a lawyer, doesn't specify the law that gives her a right to sue the County Attorney. Generously reading her *pro se* pleadings, the Court construes her complaint as arising under 42 U.S.C. § 1983, which gives individuals a

---

* Carter's Response (DN 11 at 3) accuses "[t]he Defendant" for the first time, of "stalk[ing] the Plaintiff" and "[taking] pictures of her property." These assertions in her brief, of course, are not allegations properly before the Court, are not the basis for any relief sought by Carter, and remain as-yet unconnected to her First Amendment claim.

1

right to sue state actors who deprive a person "of any rights, privileges, or immunities secured by the [U.S.] Constitution and laws."

## B. Sovereign Immunity from Official-Capacity Claims

Logsdon argues that "any § 1983 claim asserted against [him] in his official capacity must be dismissed as he is immune from such a suit." Motion at 7. "[S]tate officials sued in their official capacities for damages based upon a § 1983 action," he explains, "are absolutely immune from damages pursuant to the Eleventh Amendment." *Id.* at 6. And he posits that "as the Grayson County Attorney, [he] is a state official." *Id.* The question is whether his status as the Grayson County Attorney entitles him to sovereign immunity against official-capacity claims.

"In an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). So "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Because Logsdon is the Grayson County Attorney, an official-capacity claim against him would typically be construed as a claim against Grayson County. *See Howard v. Livingston County*, No. 21-1689, 2023 WL 334894, at *6 (6th Cir. Jan. 20, 2023) (county attorneys not protected by sovereign immunity if "[n]o connection exists between [the alleged] actions and the … state-delegated duty to prosecute state criminal offenses"). And to sue Grayson County for violations of federal law, Carter would need to plead (and ultimately prove) municipal liability under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) ("Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies.").

In some circumstances, however, a county attorney may be entitled to sovereign immunity as a *state* official based on Kentucky's "unified and integrated prosecutor system." *See* Ky. Rev. Stat. § 15.700. This statutory scheme empowers county attorneys to prosecute some state crimes as if they were Commonwealth Attorneys. *See* § 15.725. And while "pursu[ing] duties as a state agent [by] enforcing state law or policy," a county attorney receives the same sovereign immunity as any other state agent. *See Powell v. Cabinet for Health & Fam. Serv.*, No. 5:22-cv-85, 2023 WL 6392444, at *5 (W.D. Ky. Sept. 30, 2023) (citing *Pusey*, 652 11 F.3d at 657–58. So Logsdon's sovereign-immunity defense turns on whether he was "enforcing state [or county] law or policy" when he took the actions Carter complains of.

Sixth Circuit precedent "provides a guide for determining whether to attribute particular actions of a public official to a State or to a smaller political unit." *Brotherton v. Cleveland*, 173 F.3d 552, 563 (6th Cir. 1999) (discussing *Pusey*, 11 F.3d at 657). "[W]hen a county prosecutor brings formal charges in the name of the [state], he acts as 'an agent of the state rather than' of his county." *Howard*, 2023 WL 334894,

2

at *6 (applying analogous Michigan law). Otherwise, a county attorney is a local official. *See generally Brotherton*, 173 F.3d 552. Logsdon's motion doesn't address this distinction. Rather, he simply states that "as the Grayson County Attorney, [he] is a state official" who is entitled to sovereign immunity. Motion at 6. That's not enough to defeat a claim at this stage on the basis of sovereign immunity—an affirmative defense on which the defendant bears the burden. *See Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002) ("[T]he entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity[.]"). Whether he might make a proper and persuasive showing at a later stage of the proceedings, of course, is a separate question.

To the extent Logsdon invokes *state*-law immunity to shield "county officials sued in their respective or official capacities," that defense is unavailing. Motion to Dismiss at 6 (quoting *Webb v. Jessamine County Fiscal Court*, 802 F. Supp. 2d, 870 877 (E.D. Ky. 2011) (citing *Yanero v. Davis*, 65 S.W.3d 510, 518 (Ky. 2001))). A "State cannot immunize an official from liability for injuries compensable under federal law." *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 360 (1990) (citing *Martinez v. California*, 444 U.S. 277 (1980)). And Carter has made clear that "[t]his is a Federal lawsuit, not a state lawsuit" based on "First Amendment infringement." Response at 3.

### C. Prosecutorial Immunity from Individual-Capacity Claims

As a matter of federal law, "[p]rosecutors are absolutely immune from liability under § 1983 for their conduct … insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976)). This is because the Supreme Court has "consistently recognized … that § 1983 was not meant 'to abolish wholesale all common-law immunities.'" *Id.* at 484 (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Rather, that statute "is to be read 'in harmony with general principles of tort immunities and defenses rather than in derogation of them.'" *Id.* (quoting *Imbler*, 424 U.S. at 418). Prosecutorial immunity, Logsdon asserts, bars Carter's individual-capacity claims. Motion at 7 (Logsdon "is entitled to absolute prosecutorial immunity in his role as the Grayson County Attorney."). But his status as the county attorney isn't enough. Rather, he "bears the burden of showing that such immunity is justified *for the function* in question." *Burns*, 500 U.S. at 486 (emphasis added). "The analytical key to prosecutorial immunity," according to the Sixth Circuit, "is *advocacy*—whether the actions in question are those of an advocate." *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003). "If the challenged actions of the prosecutor were not performed in his role as advocate, if they 'do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings,' then only '[q]ualified immunity' applies." *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) (quoting *Buckley v.*

3

*Fitzsimmons*, 509 U.S. 259, 273 (1993)). So to receive absolute immunity, Logsdon must show that the challenged conduct falls within his role as an advocate. He has not attempted to demonstrate this.

Absent such a showing, "[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns*, 500 U.S. at 486–87. It is of course possible that qualified immunity would apply to investigative or administrative actions taken by Logsdon even if prosecutorial immunity didn't apply based on any advocacy. *See, e.g.*, *Skinner*, 463 F.3d at 525; *Imbler*, 424 U.S. at 431 n.33 ("At some point, and with respect to some decisions, the prosecutor no doubt functions as an administrator rather than as an officer of the court."). But Logsdon has not raised qualified immunity yet.

### D. Statute of Limitations

Logsdon next contends that Carter's lawsuit, filed in March 2023, came too late. In February 2019, according to the Complaint, Logsdon first forbade Carter from contacting his public office and directed his staff to not communicate with her. Complaint at 5. Because a one-year statute of limitations under state law applies and expired in February 2020, the Complaint should be dismissed. Motion to Dismiss at 10–11.

Carter has two responses. First, she denies that a state statute of limitations period applies because (as noted above) this is a federal lawsuit. Response at 3. But here federal law borrows from state law. Section 1983 claims do not carry their own federal statute of limitations, but instead follow a "state's general or residual statute of limitations for personal injury [for] claims asserted under § 1983." *Robinson v. Butler County*, No. 21-5536, 2022 WL 19977828, at *2 (6th Cir. Dec. 16, 2022) (citing *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)). In Kentucky, § 1983 claims "are subject to Kentucky state law's one-year statute of limitations." *Shehata v. Blackwell*, No. 3:20-cv-12, 2021 WL 4268045, at *4 (E.D. Ky. Sept. 20, 2021). This response doesn't shield Carter from the one-year limitations period.

Her second response fares better. She states the alleged violations didn't end in 2019. This was not a one-time event. Carter's allegations imply that Logsdon or his staff have turned her away multiple times from February 2019 to March 2023. *See* Complaint at 5–6; Response at 2–3 ("This started in 2019 and is currently going on …. Several instances required the County Attorney Jeremy Logsdon's attention but he refused to do anything!").

Logsdon does not provide any clarity, for his part. Reply (DN 12) at 4. And a continuing violation, of the sort Carter's *pro se* filings appear to describe, could preserve at least some of her claims. The "continuing-violation doctrine" could apply if Carter proves that Logsdon "repeatedly violated" her "First Amendment rights" in

4

a manner that caused her to "suffe[r] additional injuries." *Howell v. Cox*, 758 F. App'x 480, 484 (6th Cir. 2018). Given the liberal pleading standards courts must apply to *pro se* litigants, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court rejects the statute of limitations argument.

### E. First Amendment Retaliation

Logsdon characterizes Carter's claim as one for retaliation: "Although Plaintiff is allegedly bringing this suit based upon violation of her First Amendment rights, her *pro se* Complaint falls woefully short of addressing the material elements of such a claim. The elements of a First Amendment retaliation claim are well-established." Motion to Dismiss at 7–9. But retaliation isn't the only type of First Amendment claim. And it's hardly clear that her First Amendment objection is limited to retaliation. A fairer reading of her complaint is that he has simply muzzled her from communicating with his office regardless of any preceding cause. *See* Response at 2 ("The First Amendment guarantees Freedom of Speech and the right to petition to the government for a redress of grievance."). The pleadings nowhere include the word "retaliate" or any variant thereof. (Though, in fairness, neither does her Response squarely reject that label.) Given the forgiving reading afforded *pro se* pleadings, it's highly doubtful whether Logsdon's characterization is correct.

### F. Motions to Strike the Sur-Reply, Provide a More Definite Statement, and Enter a Scheduling Order

The motion to dismiss alternatively asks the Court to order a more definite statement from Carter. Rule 12(e), however, requires *Logsdon* to "point out the defects complained of and the details desired" before *Carter* may be required to replead with more specificity. FED. R. CIV. P. 12(e). These "motions are disfavored," though may be appropriate "if a pleading fails to specify the allegations in a manner that provides sufficient notice" to the defendant. *Appling v. Lifeline Health Grp., Inc.*, No. 1:05-cv-199, 2006 WL 938999, at *2 (W.D. Ky. Apr. 10, 2006) (quoting *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 514 (2002)). Logsdon points to two perceived defects: (1) Carter doesn't state what conduct was subject to retaliation or (2) why she "contact[ed] the Grayson County Attorney's Office other than pure harassment." Motion to Dismiss at 10. Although this *pro se* complaint is far from exhaustive in explaining Carter's theory of the case, neither of Logsdon's objections warrant repleading. As noted above, retaliation is not the only, or the fairest, way to construe Carter's claim. And Carter doesn't need to justify the reason she gets to speak; the First Amendment puts the onus on Logsdon to explain why she wouldn't.

Logsdon also filed a motion to strike (DN 14), arguing that Carter filed an improper sur-reply (DN 13), which should be excluded. Carter's filing introduces no new information relevant to the motion to dismiss; it only reiterates her arguments made in her earlier response brief (DN 11). The Court therefore denies the motion to

strike because the *pro se* sur-reply is largely immaterial and doesn't prejudice Logsdon in any way.

Finally, Carter filed a motion to proceed (DN 15) asking the Court to issue a scheduling order. The Court grants that request to the extent it calls for a responsive pleading from Logsdon. After he files an answer in the next 21 days, the Court will issue a scheduling order.

## ORDER

The Court denies the motion to dismiss (DN 10), denies as moot the motion to strike (DN 14), grants the motion to proceed (DN 15), and orders Logsdon to file an answer within 21 days.

Benjamin Beaton, District Judge
United States District Court

March 27, 2024